231 P.2d 439

**CUMMINGS v. WEAST et ux.**

No. 5223.

Supreme Court of Arizona.

May 21, 1951.

Rehearing Denied June 14, 1951.

John M. Schwartz, Richard B. Evans, and Herbert F. Krucker, all of Tucson, for appellant.

Gust, Rosenfeld, Divelbess, Robinette & Linton, Phoenix, for appellees.

THOMAS, Superior Court Judge.

Plaintiffs W. H. Weast and Gertrude F. Weast, husband and wife, filed an equitable action to quiet title to certain lands, hereinafter described, joining as defendants Roland Cummings and Marjorie Cummings, his wife. The husband defaulted but the wife appeared and answered. A trial to the court, sitting without a jury, resulted in a judgment for plaintiffs. After denial of her motion for a new trial, Marjorie Cummings alone has appealed. She will be hereafter referred to as defendant and the appellees designated as plaintiffs.

To determine the legal questions raised by this appeal will involve a consideration of principles of community property and partnership law pertinent to resolving the facts shown by this record. This rather involved factual situation may be generally summarized as follows:

The state land department in the year 1932 issued a certificate of purchase to the land involved in this suit to one Daniel Rentchler. The certificate covered land in Pinal county, more particularly described as Sec. 4, Twp. 4 S., R. 9 E. of the G. & S.R.B. & M.

Plaintiffs and other, under the laws of Arizona, had formed two corporations known as Magma Ranches, Inc., and Arizona Ranches, Inc., for the purpose of acquiring land and developing same for farming. While the ownership of stock in the two corporations was not entirely identi-

cal, to all intents and purposes they were both owned and controlled by plaintiffs. Rentchler in 1940 assigned his certificate of purchase to Magma Ranches, and it subsequently assigned same to Arizona Ranches. Both of these assignments were in due course filed with and approved by the state land department. Secs. 11–416, A.C.A. 1939, and 11–426, Cum. Pocket Supp. A.C.A.1939. Thereafter these two corporations were dissolved and their assets distributed.

As will more fully appear hereafter the evidence shows that during the period 1941–1943, and prior to the dissolution of the corporations, Roland Cummings loaned to plaintiff W. H. Weast sums aggregating $8,500. Some time later—without filing with the land department—Arizona Ranches executed and delivered two separate deeds to the land in question to Roland Cummings as grantee, purportedly conveying in all an undivided 50% interest thereto. There is a dispute between the parties as to whether these deeds were outright conveyances or were in truth and in fact mortgages given by way of security for the debt.

In April 1944 Roland Cummings and plaintiffs entered into a formal partnership agreement. Shortly thereafter Arizona Ranches, with the approval of the land department, assigned the certificate of purchase to section four to the individual members of the partnership. The venture proved unprofitable, and in September, 1947 the three partners entered into a formal agreement dissolving the partnership. The interest of each of the partners and of defendant under this agreement of dissolution will be more particularly discussed hereafter. Before the termination of the partnership, marital troubles developed between Roland Cummings and his wife, the defendant, culminating in an interlocutory decree of divorce being entered by the superior court of Los Angeles county, California, wherein Marjorie Cummings was decreed to have an undivided one-half interest in the partnership rights owned by Roland Cummings and a 25% interest in section four.

Pursuant to such decree the latter was directed to execute to defendant a deed of conveyance for such interest in section four. Such deed was executed without the approval of the land department. Both this deed and a copy of the California decree were recorded in Pinal county. Thereafter Roland Cummings, in accordance with the agreement to dissolve the partnership and with the consent of the land department, assigned the interest in the certificate of purchase standing in his name to section four to plaintiffs. Whereupon the department in December 1947 issued to plaintiffs a patent to the land in question. This action was then commenced to quiet title to said premises with the result heretofore stated.

Plaintiffs, as heretofore pointed out, were stockholders in both corporations.

W. H. Weast in addition thereto was secretary of both, actively taking part in the affairs thereof. His wife, Gertrude, was also president of Arizona Ranches. In December of 1941 W. H. Weast, acting for the corporate benefit, borrowed from Roland Cummings the sum of $5000. Subsequently, an additional sum of $3,500 was borrowed from Cummings, all of which was unsecured. It is conceded that this total sum of $8,500 was the community property of Roland Cummings and defendant.

About two years later Arizona Ranches executed and delivered to Cummings a warranty deed to an undivided 32½% interest in section four. Six months later a second warranty deed to an undivided 17½% interest was executed and delivered by the corporation to Cummings. Neither of these deeds was submitted to nor approved by the state land commissioner.

Thereafter plaintiffs and Cummings entered into a written partnership agreement, the terms of which provided for the ownership, development and operation of section four, and said section was to constitute the original capital of the partnership. The agreement provided that Cummings was to own a 50% interest in the partnership and each of the Weasts, 25%. Defendant was not made a party to this agreement. Shortly following the making of the partnership agreement, the corporation assigned, with the consent of the land commissioner, to "Roland Cummings, a married man, and W. H. & Gertrude F. Weast, husband and wife, as joint tenants * * *," the certificate of purchase to section four. Some three years later Roland Cummings executed and delivered a warranty deed, purportedly conveying to W. H. and Gertrude Weast his interest in section four. Defendant, his wife, did not join in this deed, nor was it submitted to or approved by the land commissioner.

Defendant contends that the two deeds from Arizona Ranches to Cummings, purportedly conveying to her husband an undivided 50% interest in section four, were absolute deeds of conveyance given in satisfaction of the pre-existing $8,500 indebtedness. Since it is conceded that the $8,500 was community property, defendant contends that these two deeds conveyed to her an undivided 25% interest in section four, and that the deed subsequently executed and delivered by Cummings to plaintiffs was invalid because not joined in by her. Sec. 71–409, A.C.A.1939. On the other hand plaintiffs contend (1) that the uncontradicted evidence shows that the deeds to Cummings were not absolute deeds of conveyance but were given by way of security for the loans, and (2) that the deeds did not operate to transfer title to the land because (a) they were not in the form required by statute for assignments of certificate of purchase and were not consented to by the state land commissioner, and (b) they could not convey

title to the land because legal title was still vested in the state.

■ The trial court agreed with defendant's contention that the two deeds were absolute deeds of conveyance given in satisfaction of the loans. This finding by the trial court is cross-assigned as error by plaintiffs whose theory in the court below, as well as here, was that the two deeds to Cummings were in effect mortgages given by way of security, and were not absolute deeds of conveyance. We believe the lower court erred in finding that these deeds were absolute conveyances. The only testimony in the case, although given by an interested party, shows that they were given as security for the loans. There was nothing in the evidence to indicate that this was false, but this testimony was actually corroborated by other facts. Thus, two deeds purportedly conveying 10% interest each were made to two other parties at different times, neither of which were consented to by the land commissioner. When an assignment of the certificate of purchase was properly made, with land department approval, from Arizona Ranches to Cummings and plaintiffs, the interests of the parties under the partnership agreement showed that Cummings' interest was to be 50%, and each of the plaintiffs was to receive a 25% interest, and neither of the plaintiffs had had any individual interest in the land theretofore. Disregarded were the two outstanding deeds of ten per-

cent interest. These interests were later transferred to plaintiffs, and no notice of them was ever given to the state land department. We hold that since the evidence of the parties who made the instruments showed that the deeds were given as security and that this evidence, uncontra-dicted by any evidence adduced by defendant, is corroborated by the making of other similar deeds about the same time, apparently for the same purpose, the trial court was in error in holding that the deeds were absolute conveyances.

■ The assignment of the certificate of purchase, made in compliance with the law, after the partnership agreement was executed, legally constituted a valid assignment and carried the partnership agreement into effect, discharged the indebtedness to Roland Cummings and changed the relationship of debtor and creditor theretofore existing to one of partnership. There was no violation of community property law in this transaction, because what Roland Cummings put into the partnership was not an interest in realty, (which would have required a joinder by his wife, the defendant,) but the $8,500, which was personalty, and he, as manager of the community, had the right to invest such sum in the partnership without his wife's consent. La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426; Coe v. Winchester, 43 Ariz. 500, 33 P.2d 286; Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976.

Considered as a whole, the facts in the instant case present the not uncommon phenomenon of a person investing money with hopes of gain and with the not unusual result of having those hopes unfulfilled. As often happens, the investor herein, following initial failure, sought to protect his investment by numerous additional acts which complicated the legal effect of the entire transaction. The record fairly shows that the investor ultimately decided that future time and effort could be more profitably spent if this particular venture were written off, even at considerable loss.

Following this decision Cummings and plaintiffs entered into a formal agreement dissolving the partnership, by means of which plaintiffs obtained the right to the whole of section four, which constituted, substantially speaking, the entire assets of the partnership, in return for the payment to Roland Cummings and defendant of $1,000 each. To forestall any legal problems as to title arising, the agreement provided that the total of $2,000 would be paid upon the delivery to plaintiffs of good and sufficient quitclaim deeds to the property by both Roland and Marjorie Cummings. The agreement was in all respects in accord with the articles of partnership, and the evidence shows that the primary purpose of the same was to enable plaintiffs to refinance or sell the property involved and prevent foreclosure on all partnership assets. Roland Cummings subse-quently executed and delivered his quitclaim deed to plaintiffs. Marjorie Cummings, defendant, refused upon demand to deliver a good and sufficient quitclaim deed, and has ever since refused to do so. Since defendant continued to refuse to execute and deliver a quitclaim deed upon demand, plaintiffs instituted this suit to quiet title to section four.

In accordance with the agreement of dissolution, Roland Cummings assigned his interest in the certificate of purchase from the state land department to plaintiffs. This transaction was approved by the land commissioner. On December 29, 1947, the state land department issued a patent to section four to plaintiffs. It appears that both of these later transactions were taken without notice being given to defendant Marjorie Cummings, without her joinder in said assignment, and presumably without her consent to the issuance of the patent.

■ With the equities of the parties being as hereinbefore set forth, the instant case becomes susceptible to obvious decision. When community personal property is invested in a partnership, it retains, as between the spouses involved, its character as community property, but is subject to the primary powers and duties governing the partnership itself, which includes the proper acts of partners inter sese. *Coe v. Winchester, supra.* Such community property is subject to the primary charge of any liabilities to which

the partnership may be subjected, however, and the power of the partnership and its members over the assets, either wholly or in part made up of community property, predominates over any rights which the members of the community may have in regard to the same. Community rights and powers can only become the prevailing consideration in such a case after all partnership obligations and powers have been fully discharged and satisfied. 1 de Funiak, Principles of Community Property, secs. 80 and 172.

The partnership agreement provided for a settlement between themselves in the event one partner desired to terminate the relationship, and a sale by the partner desiring to terminate the relationship to the partner desiring to continue the business. This duty to sell extended to and included all of the assets of said partnership. The record shows that plaintiffs, to prevent the loss incident to a threatened foreclosure of all assets, agreed, in accordance with the powers and duties set forth in the partnership agreement with Roland Cummings to acquire all of the assets from him, and in return therefor, to pay to Cummings their net value. We hold therefore that the community interest of a spouse in a partnership such as this and its assets is subordinate to the power of the partners under the agreement of partnership, to adjust the equities existing between themselves in pursuance of a termination of the enterprise. 1 de Funiak,

supra. The acts of Roland Cummings and plaintiffs by means of which the partnership relationship was finally determined, were for this reason completely proper.

Defendant in the court below alleged fraud on the part of Roland Cummings, but a close analysis of all of the facts involved in this transaction supports the conclusion of the trial court that the acts of Roland Cummings herein in all respects satisfied the general requirement that they be for the benefit of the community and not in fraud of the rights of the wife. For these reasons we confirm their propriety and hold the wife bound thereby. Greer v. Goesling, 54 Ariz. 488, 97 P.2d 218.

The purported interest of defendant under the circumstances constituted a cloud on the title of plaintiffs. There was no equitable justification for the same, and plaintiffs were properly entitled to judgment quieting their title as against defendant.

Other questions raised on this appeal have been carefully considered by this court. We deem it unnecessary to discuss them in detail however, for even if they were resolved in favor of the defendant herein, they would not affect the required result. Since there is no substantive basis for complaint, their consideration in this opinion is omitted.

Judgment Affirmed.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concurring.

NOTE: Justice M. T. PHELPS, being disqualified, the Honorable FRANK E. THOMAS, Judge of the Superior Court of Cochise County, was called to sit in his stead.